UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AKEEM MUHAMMAD,

                  Plaintiff,

v.                             Case No. 3:10-cv-705-J-37JRK

MARVIN DAVIS, et al.,

                  Defendants.

---

**<u>ORDER</u>**

**<u>I. Status</u>**

Plaintiff Akeem Muhammad, an inmate of the Florida penal system who is proceeding <u>pro se</u>, initiated this case by filing a Civil Rights Complaint (Doc. #1). He is proceeding on a Third Amended Complaint (Third Amended Complaint) (Doc. #147).[1] Plaintiff voluntarily dismissed the First Amendment claims against Defendants Davis and Taylor, and the First Amendment claims against Defendants Davis and Taylor seeking nominal damages were dismissed with prejudice. Order (Doc. #253). The remaining Defendants are Marvin Davis; Food Service Administrator of the Florida Department of Corrections (FDOC);

---

[1] Plaintiff was granted leave to file a Third Amended Complaint, except with regard to any claims concerning events post-July 29, 2010 (the date of the filing of the original complaint pursuant to the mailbox rule). Order (Doc. #146). Any claims concerning events post-July 29, 2010 were stricken from the Third Amended Complaint. <u>Id</u>.

Assistant Warden (Programs) of Florida State Prison (FSP); Warden of FSP; Alex Taylor; R. Graham; and M. Morris.

In his Third Amended Complaint, Plaintiff states that he is suing the Defendants in their official capacities under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Two interrelated claims are raised:

> Defendants' refusal to provide or direct prison staff to provide Plaintiff with a daily pre-fasting meal prior to subh saadiq/Fajr during Ramadan when he is approved by Chaplaincy Services to participate in the Ramadan Fast as accomodated [sic] by Defendants substantially burdens Plaintiff's exercise of religion and is not in furtherance of a compelling penological interest by the least restrictive means in violation of RLUIPA.

> Defendants' refusal to provide or direct prison staff to provide Plaintiff with a nutritiously adequate diet during Ramadan when he is approved by Chaplaincy Services to participate in the Ramadan Fast as accomodated [sic] by Defendants substantially burdens Plaintiff's exercise of religion and is not in furtherance of a compelling penological interest by the least restrictive means in violation of RLUIPA.

Third Amended Complaint at 11-12.

The following relief is sought: (1) a declaration that Defendants violated RLUIPA; (2) a preliminary and permanent injunction directing Defendants and their successors to provide or direct prison staff to provide Plaintiff with (a) a daily pre-fasting meal no later than two hours before sunrise, and (b)

a nutritiously adequate diet during Ramadan when he is approved by Chaplaincy Services to participate in the Ramadan fast as accommodated by prison staff; (3) an award of costs; and (4) any other relief, as entitled.

This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. #173) (hereinafter Motion for Summary Judgment).[2]  Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment (Response) (Doc. #258) was filed on November 27, 2012, pursuant to the mailbox rule.[3]

## II.  Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

---

[2] The Court will refer to the exhibits appended to the Motion for Summary Judgment as "Ex."

[3] Plaintiff was made aware of the provisions for responding to a motion for summary judgment in the Court's Order (Doc. #3), filed August 13, 2010, and given an opportunity to respond to the Defendants' Motion for Summary Judgment.  The Court will refer to the exhibits appended to the Response as "Plaintiff's Exhibit."

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324, 106 S.Ct. 2548).[4]

Id. at 1314.

### III. Plaintiff's Allegations[5]

Plaintiff alleges the following facts in his sworn Third Amended Complaint.  He is an inmate in the custody of FDOC housed in solitary confinement at FSP.  He has been housed in confinement at FSP since March 1, 2006.  He is a practicing Muslim.  A fundamental tenet of his faith is to fast during the month of Ramadan.  It is his belief that each day during Ramadan, the fast begins at Fajr and lasts until sunset.  He describes Fajr as:

---

[4] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

[5] Any references to allegations concerning post-July 29, 2010 events have been omitted based on the Court's previous ruling.

> a natural phenomenon which has a precise point of initiation in the eastern horizon; that approximately ninety minutes before sunrise, a dim whitish glow appears vertically in the eastern horizon; that soon after this vertical glow, a brightness appears horizontally in the eastern horizon; that this horizontal glow spreads instantly along the horizon becoming larger and larger until after a short while it becomes light; and that subh saadiq/Fajr commences with the appearance of this horizontal glow in the eastern horizon.

Id. at 4-5.

Plaintiff believes that the daily Ramadan fast consists of abstention from sexual relations, food, drink or consuming anything into the body from Fajr until sunset, and should there be a violation of the fast, it is a sin and invalidates the fast. In order to avoid consuming anything during the fast, he has been advised that all eating and drinking should cease approximately ten minutes prior to Fajr.

The FDOC has an unwritten policy to accommodate those inmates who have been approved by the Chaplaincy Services to participate in the Ramadan fast. Defendants have adopted an official position that the daily Ramadan fast commences at sunrise and ends at sunset. Defendants have adopted a policy to provide Muslim inmates participating in Ramadan with a pre-fasting meal prior to sunrise. Chaplaincy Services has approved Plaintiff to participate in the Ramadan fast. However, since Plaintiff is in confinement, his meals are delivered to his

cell.  The rules of FDOC prohibit inmates from saving or storing food from meals.  Defendants have denied Plaintiff's requests to be provided with a daily pre-fasting meal prior to Fajr during Ramadan.  Instead, he has been provided with his pre-fasting meals between Fajr and sunrise, after the commencement of his daily fast, during Ramadan in 2006, 2007, 2008, and 2009.

Plaintiff has congenital heart disease, colitis, irritable bowel syndrom, chronic diarrhea, and chronic lethargy.  He is unable to sustain himself in good health for an entire month on the FDOC post-fasting meal provided each day.  He suffers serious medical problems, physical weakness, and extreme hunger, diminishing the quality of the spiritual experience from fasting.

Defendants accommodate Jewish inmates approved to participate in fasts during the Fast of Esther and Purim, from approximately two hours before sunrise to approximately forty-five minutes after sunset; during the Fast of Gedaliah, from three hours before sunrise to one hour after sunset; and the Fast of Tammuz, from approximately two hours before sunrise to approximately forty-five minutes after sunset.

Plaintiff is pressured to break his fast in violation of Islamic tenets in order to relieve himself of severe physical suffering.  His qualitative spiritual experience expected from fasting is substantially diminished.

6

With respect to Plaintiff's claim that he has not been provided with a nutritiously adequate diet during Ramadan, Plaintiff alleges the following.   During the Ramadan fast, Muslim inmates are provided with a nutritiously inadequate diet, lacking in sufficient vitamins, vegetables, fruit, fiber, salt, complex carbohydrates, potassium, calcium, magnesium, and calories.   During Ramadan 2009, approximately forty-five per cent of the pre-fasting meals consisted of eight ounces of corn flakes, two pancakes or two slices of french toast or two pieces of coffee cake.   During Ramadan 2009, the post-fasting meals consisted of four ounces of vegetables, two slices of white bread, three ounces of cheese, eight ounces of rice or pasta or potatoes, and one cookie or piece of cake.

Since Plaintiff is not provided with a nutritiously adequate diet during Ramadan, he is pressured to break his fast in violation of Islamic tenets in order to relieve himself of severe physical suffering.   As a result, the quality of his spiritual experience expected from fasting is substantially diminished.

## IV. Defendants' Motion for Summary Judgement

### A.   Eleventh Amendment Immunity

Insofar as Plaintiff Muhammad seeks monetary damages from Defendants in their official capacities, the Eleventh Amendment

clearly bars suit.  Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam).

## B.  Sovereign Immunity

To the extent the Defendants are sued in their official capacities, RLUIPA "does not allow damage claims against state officials sued in their official capacity." Scott v. Brown, No. 1:11-CV-2514-TWT-JFK, 2012 WL 1080363, at *3 (N.D. Ga. Jan. 31, 2012) (citing Sossamon v. Texas, 131 S.Ct. 1651, 1663 (2011)), report and recommendation adopted by Scott v. Brown, No. 1:11-CV-2514-TWT, 2012 WL 1080322 (N.D. Ga. Mar. 30, 2012).  In Sossamon, 131 S.Ct. at 1663, the Supreme Court of the Unites States concluded:  "that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."

## C.  No Private Action for Monetary Damages

RLUIPA does not create a private right of action for monetary damages against prison officials sued in their individual capacities. Hathcock v. Cohen, 287 F. App'x 793, 798 (11th Cir. 2008) (per curiam) (not selected for publication in the Federal Reporter).

## D.  RLUIPA Claims

Defendants contend that Plaintiff is not entitled to injunctive relief. Motion for Summary Judgment at 27-29.  They

state that Plaintiff is on a therapeutic diet, and the content of his meals is based on that diet. Id. at 28. With respect to the delivery of food, they explain that a standard and generalized plan is formulated each year for Ramadan, subject to the warden's approval, for how to accommodate all of the participants, relying on guidance from Chaplaincy. Id. As part of the plan, a target pre-fasting meal time is selected. Id. They assert that basing meal times on the position of the sun is too variable and not feasible for a correctional institution. Id. They attempt to keep standardized and streamlined procedures for an institutional setting. Id. Also, day-to-day unpredictable situations arise which may cause delay in the delivery of meals. Id.

Additionally, Defendants explain that they are attempting to accommodate inmates in various confinement statuses and schools of Muslim thought, and the delivery of meals depends not only on food services' actions but also on the events happening on the various wings. Id. at 28-29. Defendants assert that special accommodations for an individual inmate, above and beyond what is already routinely provided, would be administratively burdensome and interfere with the safety and security of the institution. Id. at 29. Defendants are faced with limited staff resources during Ramadan, and fear that special accommodations will smack of preferential treatment for

one inmate above others.  Id.  Defendants believe that this may lead to discord among the inmates.  Id.  Finally, Defendants claim they have a legitimate governmental interest in running a simplified food service, and due deference is owed to their experience and expertise in handling food services in a correctional setting.  See Ex. D, Declaration of Brad Whitehead.

Defendants provide the 2006 Memorandum for Ramadan from Alex Taylor, Chaplaincy Services Administrator, dated August 15, 2006.  Ex. E, Ramadan 2006.  It outlines the purpose of Ramadan:

> Fasting was enjoined on the Muslim with these words: "O ye who believe!  Fasting is prescribed to you as it was prescribed to those before you, that ye may (learn) self-restraint." [Sura 2 Ayat 183].  Therefore, it is through fasting that the Muslim learns self-restraint, discipline of his or her appetites and flexibility of habits. A further benefit is the development of complete obedience to God the Creator.

Id. at 1.

There is a provision for allowing inmates to request to participate in Ramadan, indicating a religious preference of Muslim.  Id.  There is a reference to exemptions from fasting for those inmates who are not healthy enough to fast, traveling inmates, and elderly or frail inmates (and exemptions for women menstruating, nursing or pregnant).  Id. at 2.  Non-confinement inmates are to be escorted to the dining facility for a pre-dawn meal at 4:30 a.m., to be completed by 5:15 a.m.  Id.  This is followed by congregational prayer; however, the prayer may be

done individually.  Id. at 2-3.  Allowance is made for mid-day
prayer and late-afternoon prayer.  Id. at 3.  Finally, the
inmates gather in the chapel for sunset prayer.  After group
prayer, which finishes at approximately 8:15 p.m., the Muslin
inmates participating in Ramadan receive their evening meals.
Id.  It is noted that the times for sunrise and sunset are
provided through the Griffith Observatory.  Id.  Finally, there
is allowance for the return to chapel for evening prayer.  Id.
at 4.

     Of import, there is one provision for inmates who are in
confinement: "Muslim inmates who are in confinement and wish to
observe Ramadan **may participate in the fast and have a sack meal
in the evening**.  However, all rules regarding group activities
for inmates in confinement must be adhered to."  Id. at 4
(emphasis added).   No specific information is provided
concerning the pre-dawn meal for confinement inmates.

     Defendants provide the 2007 Ramadan Memorandum as well.
Ex. E, Ramadan 2007.  It is similar to the 2006 Ramadan
Memorandum.  The 2008 Ramadan Memorandum states that inmates
will be escorted to the dining facility for the pre-dawn meal
at 5:00 a.m., which is to be completed by 5:45 a.m.  Ex. E,
Ramadan 2008 at 2.  There are some adjustments to prayer times
as well.  Id.  The provision for confinement inmates is
included.  Id. at 4.  The 2009 Memorandum, the 2010 Memorandum,

11

the 2011 Memorandum, and the 2012 Memorandum include the provision for confinement inmates. Ex. E, Ramadan 2009 at 4; Ex. E, Ramadan 2010 at 4; Ex. E, Ramadan 2011 at 4; Ex. E, Ramadan 2012 at 3. It is noted that due to the closure of the dining hall in the evening, Muslim inmates in non-confinement status may be provided with a sack meal for the evening meal. Ex. E, Ramadan 2012 at 3.

The 2006 Religious and Secular Guidelines provide that the inmates observing Ramadan should refrain "from eating during daylight hours." Ex. F at 1. It places the responsibility on the institution to assist the inmates participating in the fast by providing a pre-dawn meal and an evening meal after sundown. Id. The meals are to be pork-free, and if requested, meat-free. Id. With respect to the definition of dawn, the Guidelines provide:

> [d]awn begins at the first appearance of light in the morning. This begins at various times at the institutions due to longitudinal and latitudinal locations. Please check with your local chaplains who can resource the newspaper or weather station for local times and, therefore, accommodate this observance consistent with the smooth and orderly operation of your facility and security concerns.

Id.

With regard to diet, the vegan alternate entree meal is to be served cold, unless the institution has the capability to serve a hot evening meal after sundown. Id. In order to assure

12

adequate nourishment, the following items are supposed to be added to the vegan alternate entree meal: milk at breakfast and a fortified beverage at dinner; a high vitamin C food (e.g. citrus fruit), the fortified beverage or citrus juice should be provided daily; vitamin A, which may be met by providing a raw carrot in the sack meal at least every other day.  <u>See</u> Ex. F, Seasonal Holiday Guidelines (revised April 2011).

The Chaplaincy Supervisor, in 2009 and 2010, directed that all inmates participating in the Islamic Ramadan Fast will received a breakfast tray.  Ex. G.  The post-sunset meal was directed to be served hot, in a tray distributed by security. <u>Id</u>.  It was specifically noted that inmates participating in the fast will not be issued regular noon or evening meal trays as these inmates are fasting from dawn until sunset.  <u>Id</u>.  For 2011 and 2012, the evening meal is designated to be a bag lunch distributed by security, noting that it cannot be consumed until after sunset.  <u>Id</u>.  All inmates participating in the Islamic Ramadan Fast are to receive breakfast, and lunch and dinner trays are to be withheld.  <u>Id</u>.

Defendants have also submitted the Food Service Standards, an Internal Operating Procedure effective September 7, 2010. Ex. H.  Of some import, it defines alternate entree, therapeutic diets, and vegetarian and vegan.  <u>Id</u>. at 2-3.  It is specifically noted that the alternate entree will provide a diet

13

sufficient to sustain an inmate in good health.  <u>Id</u>. at 5.  It requires that all vegetables be prepared without meat, meat-fat, meat-based broth, or butter.  <u>Id</u>.

Defendants provide a transcript of the deposition of Plaintiff, taken July 6, 2012.  Ex. C.  Plaintiff states that in 2006, ninety-five per cent of the time his Ramadan breakfast tray was delivered after the Ramadan fast started.  <u>Id</u>. at 18. At that time he was on the regular alternate entree menu plan. <u>Id</u>. at 23.  Plaintiff was allowed by some correctional officers to reserve some food in his cell, although keeping food in cells is against institutional rules.  <u>Id</u>. at 27-28.  Plaintiff complained that he suffered adverse physical symptoms by not receiving his breakfast tray before the fast started.  <u>Id</u>. at 28.  He suffered from weakness, starvation, and headaches.  <u>Id</u>. at 29.  He finally had to stop participating in the official Ramadan fast.  <u>Id</u>.  He attempted to fast on his own, but he could not save enough food.  <u>Id</u>.  As a result, he slept a lot, suffered from headaches, and was weak.  <u>Id</u>.

In 2007, Plaintiff decided not to sign up to participate in the Ramadan fast, because the Chaplain informed him that the same procedure would be followed for the breakfast trays.  <u>Id</u>. at 30.  He was told he would not be able to receive his alternate diet (non-meat) while on Ramadan fast.  <u>Id</u>. Plaintiff's grievance requesting alternate entree meals while

14

on the Ramadan fast was approved after the start of Ramadan. Id. at 31.  He was then placed on the Ramadan list.  Id.  Prior to being on the Ramadan list, Plaintiff fasted on his own, with some officers allowing him to keep food in his cell.  Id. at 31.

During Ramadan 2007, the breakfast trays were served after the fast commenced.  Id. at 32.  Plaintiff was able to sustain himself because food services brought a regular cooked meal for the post-sunset meal, but they also brought a bag lunch to go with the meal.  Id. at 32.  Plaintiff saved some of his evening meal to eat before the morning fast.  Id.  Plaintiff had no adverse effects in 2007 as he had plenty of food.  Id.  There was a special officer at that time who delivered the Ramadan trays.  Id. at 33.  Plaintiff attests that the trays were delivered after the commencement of the fast ninety-five per cent of the time.  Id. at 34.  The officer delivering the trays explained that he was trying to get the trays to Plaintiff on time.  Id. at 35.  Plaintiff refused the tray if it was delivered during the fast.  Id.

Plaintiff recites a portion of the Koran every day of the year.  Id. at 39.  Plaintiff explains that during Ramadan, extra rewards are given for doing something good, but a sin committed during Ramadan weighs significantly more than it would during the rest of the year.  Id.  Plaintiff attests that he can read Arabic, and he reads the Koran in Arabic.  Id. at 40.

15

Plaintiff states that Ramadan 2008 was the same as 2007. Plaintiff signed up to participate in the fast, and he was approved to participate. Id. at 43. The pre-fasting meals were delivered after the fast commenced every day. Id. Plaintiff refused almost every breakfast tray, unless it had something like coffee cake which he could save without the item spoiling. Id. at 43-44. The Ramadan officer and his orderly delivered the trays. Id. at 43.

Plaintiff attests that the officers told him that they were advised that the fast starts at sunrise. Id. at 44. Plaintiff explained to the officers that the Ramadan fast starts about ninety minutes prior to sunrise. Id. Plaintiff was provided a post-sunset cooked meal and a bag lunch in the evening. Id. at 45. He would eat the bag lunch meal as his pre-fasting meal. Id. at 45-46. Plaintiff had no medical adverse effects as the master menu portions had not been reduced. Id. at 46. They were reduced in 2009. Id. Plaintiff was on the alternate entree meal plan, and he received eight ounces of vegetables, eight ounces of a starch, two pieces of bread, and then he was given the bag meal which contained three to four sandwiches, vegetables, and a dessert. Id.

With regard to Plaintiff being on disciplinary confinement, he attests that he will be living on confinement for the rest of his life, unless the rules concerning shaving are changed.

16

Id. at 49.  Plaintiff explains that he wears a beard as it is against his religion to be clean shaven.  Id.  If he leaves confinement, the rule will be enforced, and he will be shaved. Id.  He states that he has been on disciplinary confinement since March 2009.  Id. at 50.

On April 30, 2009, a doctor placed Plaintiff on a low residue diet after Plaintiff complained about colitis and eating beans and raw vegetables.  Id. at 50-51.  Prior to being housed at FSP, Plaintiff had been on a 4000 calorie diet due to his medical condition.  Id. at 50.  The low residue diet is prescribed for irritable bowel syndrome, and has about 2600 to 2700 calories.  Id. at 51.  After grieving the matter, Plaintiff was allowed an alternate entree low residue diet.  Id. at 55-56.

Regarding Ramadan 2009, Plaintiff states he was approved to participate.  Id. at 64.  His pre-fasting meals were delivered after the fast started, so he refused the trays.  Id. Instead of bringing him alternate entree low residue trays for the post-sunset meal, he was provided a regular low residue meal with a meat entree.  Id.  Plaintiff refused that tray as well. Id.  The kitchen was closed in the evening.  Id. at 65. Plaintiff explained that he could not eat meat as it was against his religion.  Id.  In 2009, there was not an officer assigned for Ramadan.  Id. at 66.  The trays were being delivered to the Ramadan participants at the same time as the regular trays.  Id.

Again, the officer said the fast starts at sunrise, and Plaintiff responded that it starts about ninety minutes prior to sunrise. <u>Id</u>. at 67.

Plaintiff estimates that approximately five per cent of the time, the breakfast trays were delivered before the commencement of Fajr. <u>Id</u>. at 68. Plaintiff did not complete the official Ramadan fast in 2009. <u>Id</u>. at 71. He requested to be taken off the list because he was getting meat on the dinner trays and the breakfast trays were delivered late. <u>Id</u>. at 71-72. The breakfast foods would spoil, so he could not save them for the evening meal. <u>Id</u>. at 72. Plaintiff fasted on his own, saving some of his food. <u>Id</u>. He fasted every day from Fajr until sunset. <u>Id</u>.

In 2009, no bag meal was provided with the post-sunset meal. <u>Id</u>. at 73. Additionally, in July of 2009, the food portions on the master menu were reduced. <u>Id</u>. at 74.

Plaintiff estimates that he loses no more than ten pounds during Ramadan. <u>Id</u>. at 75. He weighs approximately 130 pounds. <u>Id</u>. Losing weight has not been a problem for Plaintiff during Ramadan; however, the lack of adequate nutrition during Ramadan has caused him weakness, headaches, and drowsiness. <u>Id</u>. at 75-76.

Plaintiff wrote the Chaplain prior to the start of Ramadan 2010 to determine if there would be any changes in the plan.

18

Id. at 76.  Plaintiff was advised that everything would be the same.  Id.  Plaintiff concluded that there was not enough food to save if he was on the Ramadan list.  Id.  The breakfast tray would spoil and the low residue dinner does not provide enough food for an entire day.  Id.  Plaintiff decided to not sign up for the fast and conduct his own fast.  Id.  This proved difficult because he was having to save food, which is against the institutional rules.  Id. at 77.  Plaintiff did not complain to medical because the officers were turning a blind eye to his saving food in his cell.  Id.  Plaintiff saved his food until after the sun went down, but he was eating spoiled food which caused an upset stomach.  Id. at 78.

Plaintiff attends gastro and cardiac chronic clinics.  Id. at 82-83.  He is on a low residue diet.  Id. at 83.  He is an orthodox Muslim, Sunni or Ahlus Sunnah wal Jamaah.  Id. at 106. There are some progressive Muslims known as modernists.  Id. at 106-107.  Plaintiff states that starting the commencement of the fast at Fajr is not a uniquely orthodox tenet, as it is accepted by Islamic scholars around the world.  Id. at 108.  Sunrise is not the same as Fajr.  Id. at 113.

**E.  RLUIPA:  Conclusions of Law**

Plaintiff, an inmate confined in the FDOC, is provided with the heightened statutory protection to religious exercise under

RLUIPA.[6]  Section 3 of RLUIPA provides:  "'[n]o government shall impose a substantial burden on the religious exercise' of an institutionalized person unless, as in RFRA, the government demonstrates that the burden 'is in furtherance of a compelling governmental interest' and 'is the least restrictive means of furthering' that interest. § 2000cc-1(a); cf. §§ 2000bb-1(a), (b)."  Sossamon, 131 S.Ct. at 1656.

As recognized by the Eleventh Circuit:

> Section 3(a) of RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). More expansive than prisoners' rights under the First Amendment, RLUIPA "affords to prison inmates a heightened protection from government-imposed burdens, by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest." Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007) (internal quotation marks omitted), abrogated on other grounds by Sossamon v. Texas, --- U.S. ----, 131 S.Ct. 1651, 179 L.Ed.2d 700 (2011).  Thus, if Gardner's

---

[6] In City of Boerne v. Flores, 521 U.S. 507, 532-33 (1997), the United States Supreme Court found the Religious Freedom Restoration Act (RFRA) to be unconstitutional as applied to state and local governments because it exceeded Congress' power under section 5 of the Fourteenth Amendment.  Now, institutionalized persons can sue pursuant to the RLUIPA, which preserves the compelling governmental interest/least restrictive means test but avoids the pitfalls of RFRA.

> RLUIPA rights were not violated, neither
> were his First Amendment rights.
>
> "To establish a prima facie case under
> section 3 of RLUIPA, a plaintiff must
> demonstrate 1) that he engaged in a
> religious exercise; and 2) that the
> religious exercise was substantially
> burdened." Smith, 502 F.3d at 1276. "The
> practice burdened need not be central to
> the adherent's belief system, but the
> adherent must have an honest belief that
> the practice is important to his free
> exercise of religion." Sossamon v. Lone
> Star State of Texas, 560 F.3d 316, 332 (5th
> Cir. 2009). "Although RLUIPA bars inquiry
> into whether a particular belief or
> practice is 'central' to a prisoner's
> religion, ... the Act does not preclude
> inquiry into the sincerity of a prisoner's
> professed religiosity." Cutter, 544 U.S. at
> 725 n. 13, 125 S.Ct. 2113.

Gardner v. Riska, 444 F. App'x 353, 354-55 (11th Cir. 2011) (per

curiam) (not selected for publication in the Federal Reporter).

In the Third Amended Complaint, Plaintiff is seeking

injunctive relief pursuant to RLUIPA.[7]  In order to gain such

relief, he must first establish a *prima facie* case.  Indeed,

Muhammad has the initial burden of showing that he seeks to

engage in an exercise of religion and that the challenged

practice substantially burdens that exercise.  Al-Amin v. Shear,

325 F. App'x 190, 192 (4th Cir. 2009) (per curiam) (not selected

---

[7] Plaintiff does not seek monetary relief with respect to
his RLUIPA claims; however, in an abundance of caution, the
Court has addressed Defendants' claims of immunity and the
assertion that there is no private right of action for monetary
damages under RLUIPA.

for publication in the Federal Reporter).  In undertaking this review, the Court must consider the sincerity of Muhammad's beliefs.  Once Plaintiff has met his burden, the Defendants must demonstrate "that the imposition of the burden or refusal to accommodate a plaintiff's belief furthers a compelling government interest by the least restrictive means."  Benning v. Georgia, 845 F.Supp.2d 1372, 1377 (M.D. Ga. 2012).

At this point, Plaintiff must show that the practice of fasting from Fajr to sunset is sincerely held and rooted in religious belief.  Id.  Plaintiff, in his Affidavit, attests that he is a practicing Muslim, and practiced his faith from 1992 to 1994, and from 1996 to present.  Plaintiff's Exhibit A at 1.  He states his religion is Islam, and he is commanded to fast during Ramadan.  Id. at 3.  All meat provided by the FDOC is not Halal and is forbidden.  Id. at 4.  The Ramadan fast commences at subh saadiq or Fajr.  Id.  It is a tenet of his faith to fast from Fajr to sunset.  Id. at 8.  By institutional rule, he is prohibited from storing or saving food in his cell. Id. at 9.  The FDOC considers the Ramadan fast to be from sunrise to sunset, or daylight hours.  Id. at 13.  Therefore, Plaintiff's breakfast trays during Ramadan are routinely provided after the commencement of the fast, Fajr.  Id. at 15-18.

Plaintiff has proposed these alternatives to allow him to follow this tenet of his faith: (1) the provision of a bag lunch pre-fasting meal to be given along with the post-sunset meal, but to be consumed before Fajr in the morning; or (2) the provision of a bag lunch pre-fasting meal at any time before two hours before sunrise; or (3) the provision of a bag lunch pre-fasting meal and a bag lunch post-sunset meal to be provided along with all of the other dinners served on the wings, but to be consumed after sunset and before Fajr the next morning; or (4) the provision of pre-fasting meals no later than two hours before sunrise on the longest day of Ramadan.  Id. at 34-35.

Plaintiff has also submitted the Perpetual Prayer Schedules with the time of Fajr and the time of sunrise referenced. Plaintiff's Exhibit A-1.  Plaintiff has received a response from prison officials that during Ramadan he may not eat or drink "while the sun shines."  Plaintiff's Exhibit A-4.  He has also been advised that a "pre-dawn" meal should be provided each day. Plaintiff's Exhibit A-5.  The FDOC Chaplaincy Services Religion Technical Guide for Selected Religious Groups, designated from the Governor of Florida and the Secretary of the FDOC, Plaintiff's Exhibit A-6 at 22 (bolding added), explains that fasting, during Ramadan, is:

> obligatory for every Muslim man and woman.
> **In Islam, fasting means abstaining completely from food, drink, smoking, and marital relations every day of Ramadan**

23

> **before the break of dawn until sunset.**
> <u>Ramadan, the holy month of fasting, is the
> ninth lunar month of the Islamic calendar</u>.
> Fasting infuses the individual with a
> genuine virtue of deprivation, vigilance,
> and sound conscience, discipline, patience
> self control, and sympathy to the needy and
> poor.  Adequate, suitable food and drink
> should be provided at the commencement and
> the conclusion of the fast each day to
> prevent ill health.  A Muslim may be exempt
> from fasting if he/she is ill.  Women are
> exempt when they are pregnant or when
> menstruating.  All missed days however have
> to be made up on other days.  It is highly
> recommended that Muslims increase the
> recitation of the holy Qur'an and observe
> the nightly prayers called Taraweeh.

There is a brief provision for Muslim inmates in confinement
which states that if they wish to observe Ramadan, they "may
participate in the fast and have a post-sunset meal in the
evening."  <u>Id</u>. at 55.

In response to a Chaplain's inquiry during Ramadan 2004,
it states that "Ramadan fasting provides a meal, usually a hot
one at the end of the day.  Inmates do not receive additional
food to make up for meals missed during fasting."  Plaintiff's
Exhibit A-7 at 59.  There is also recognition and accommodation
for Jewish inmates to fast two hours before sunrise and three
hours before sunrise for particular Jewish fasts.  <u>Id</u>. at 60-61.
When Plaintiff complained about the pre-fast meal being served
too late, he was advised by the Chaplain that the prayer and
fasting times are sent from Central Office.  Plaintiff's
Exhibits A-31 & A-32.  In another response, the Chaplain states

24

that the FDOC uses the dates and times provided by qualified and recognized Muslim sources throughout much of the Muslim world. Plaintiff's Exhibit A-33.

More recently, Plaintiff has inquired as to how the Chaplaincy defines the part of the day the daily Ramadan fast begins.  Plaintiff's Exhibit A-44.  In response, Chaplain Morrison, the Regional Lead Chaplain, states: "It begins at sunrise (dawn) and can vary in time each day during the 30 day fast.  Usually a pre dawn meal is provided approximately 1 hour before dawn (civil twilight) and sunrise."  Id.  Chaplain Morrison clarified his earlier response: "The time for Fajr prayer begins at dawn and lasts until rays of the sun are resplendent.  Fasting means abstaining from several things, from just before the starting of dawn (i.e. just before the start of Fajr) until sunset, with the intention of fasting.  Efforts ar[e] made to provide a meal within 1 hour prior to the onset of Fajr."  Plaintiff's Exhibit A-45.  Chaplain Morrison adds: "The Fajr prayer begins **at dawn or civil twilight.**  It will vary from day to day during Ramadan.  See attach [sic] prayer schedule for Ramadan 2013 attached.  You will be fed prior to the dawn meal and after sundown."  Plaintiff's Exhibit A-46 (emphasis added).

Ahmed Sadek Ahmed, an Islamic theologian, in his Affidavit attests:

> The daily fast commences at Subh Saadiq,
> also known as Fajr, and is the time when
> Fajr Salaat or ritual prayer time begins.
> Subh Saadiq is a natural phenomenon, which
> has a precise point of initiation in the
> eastern horizon.   Approximately ninety
> minutes before sunrise, a dim whitish glow
> appears vertically in the eastern horizon.
> Soon after this vertical glow, a brightness
> appears horizontally in the eastern
> horizon.   This horizontal glow spreads
> instantly along the horizon becoming larger
> and larger until after a short while it
> becomes light.   Subh Saadiq or Fajr
> commences with the appearance of this
> horizontal glow in the eastern horizon.

Plaintiff's Exhibit B at 2-3.   Ahmed explains that it is

advisable for Muslims to cease all eating and drinking

approximately ten minutes prior to Fajr in order to avoid

consuming anything during Subh Saadiq.   Id. at 3.   He states

there is complete unanimity of all Muslim sects that the fast

begins at Fajr, not at sunrise.   Id.   A similar Affidavit of

Asim Ahmad, an Islamic theologian, has also been submitted to

the Court.   Plaintiff's Exhibit C.   The sun is approximately

eighteen degrees below the horizon at Subh Saadiq.   Plaintiff's

Exhibit K; Plaintiff's Exhibit M at 3; Plaintiff's Exhibit N.

Civil twilight is when the sun is six degrees below the horizon;

nautical twilight is when the sun is twelve degrees below the

horizon; and astronomical twilight is when the sun is eighteen

degrees below the horizon, when the "sky illumination is so

26

faint that it is practically imperceptible."[8]  Plaintiff's Exhibit N.

Antonio Bryan, a Muslim inmate confined at FSP, states that in 2012 he had to end his Ramadan fast because he did not receive his breakfast until after Fajr or within eight minutes of Fajr.  Plaintiff's Exhibit W at 3.  He states that inmates in confinement are not permitted to participate in any Ramadan activities except receiving Ramadan breakfast and post-sunset meals.  Id. at 3-4.

Plaintiff was advised that a low residue diet provides an average of 2600-2700 calories per day, if the inmate consumes all of the food items on the meal trays.[9]  Plaintiff's Exhibit A-25.  An example of a bag lunch meal for a low residue alternate entree meal would include one peanut butter and jelly sandwich, one cheese sandwich, two desserts and an eight ounce fortified beverage.  Plaintiff's Exhibit Z-2 at 3.  A low residue diet "includes foods that are low in indigestible

_____

[8] Generally, civil twilight begins when the geometric center of the sun is six degrees below the horizon (civil dawn); nautical twilight is the time when the center of the sun is between six and twelve degrees below the horizon; astronomical twilight is the time when the center of the sun is between twelve and eighteen degrees below the horizon.  The length of twilight is influenced by the latitude of the observer.

[9] Apparently this would be the calories provided in three low residue diet meal trays, including breakfast, lunch and dinner.

carbohydrates and connective tissues which reduce intestinal motility." Plaintiff's Exhibit Z-13 at 4.

It is not this Court's duty to determine the centrality of a particular belief or the validity of Plaintiff's interpretation of his creed. This Court may, however, address whether the practice Plaintiff wishes to engage in, being provided his pre-dawn Ramadan meal well before astronomical twilight so that the meal may be consumed prior to Fajr, is both sincerely held and rooted in his religious belief. Defendants do not dispute that Plaintiff is a practicing Muslim. In addition, Plaintiff has produced sufficient evidence that his belief is entitled to protection as it is sincerely held and is rooted in his Islamic faith. Furthermore, there is no evidence that Plaintiff Muhammad is attempting to seek favorable treatment or to harass prison staff by requesting that his religious belief be accommodated by the prison officials.

Next, this Court must inquire as to whether the FDOC policy of routinely providing confinement inmates with pre-fasting meals after astronomical twilight (up until civil twilight, or until sunrise, or after sunrise, depending on the days and years in question), effectuates a substantial burden on the exercise of Plaintiff's religion. A substantial burden must be more than an inconvenience; instead, the governmental action must significantly hamper Plaintiff's religious practice. Benning,

28

845 F.Supp.2d at 1380 (quoting Smith v. Allen, 502 F.3d 1255, 1277 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 131 S.Ct. 1651 (2011)).  Plaintiff has attested that he has removed himself from the Ramadan Fast list or simply not placed himself on the list because he has been unable to comply with the tenets of his faith when he is on the Ramadan Fast list.

Since Plaintiff is in disciplinary confinement, and remains on confinement because he refuses to shave due to his religious beliefs, he is reliant upon others to provide him his meals at the appropriate time to comply with the Ramadan fast.  He is unable to attend to his religious needs and is dependent on others for permission and accommodation to exercise the tenets of his faith.  Plaintiff attests that he has tried to comply with the tenets of his faith by storing food in his cell, but this is done in violation of the institutional rules and leads to consuming spoiled food and otherwise diminishes his religious experience.  Additionally, he maintains that the food provided to him during Ramadan is nutritiously inadequate, even taking into account his medical condition.

At this stage, the Court is convinced that Plaintiff has offered sufficient evidence to create a question of material fact sufficient for a jury to find that his religious exercise of his beliefs has been substantially burdened by the Defendants

in adopting a confinement feeding policy which prohibits Plaintiff from complying with the tenets of his faith. Plaintiff has shown that Defendants have deprived him of a reasonable opportunity to practice his Islamic faith by depriving him of timely pre-fast meals, not only interfering with the tenets of his faith but depriving him of sound nutrition.

Now it is the Defendants burden to show that the feeding policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. Linehan v. Crosby, 346 F. App'x 471, 473 (11th Cir. 2009) (per curiam) (not selected for publication in the Federal Reporter).  Defendants have not shown a compelling governmental interest.  At most they have shown merely a legitimate governmental interest, not a compelling one. Although it may be difficult to accommodate all participants of Ramadan in an institutional setting, conclusory statements that the position of the sun is too variable and not feasible for a correctional institution to follow is no justification for failing to provide pre-fasting meals to confined Muslim inmates in a timely fashion.  The Florida Department of Corrections' Religious and Secular Guidelines reference the movement of the sun and longitudinal and latitudinal locations, as does the Memorandum for Ramadan, which references the citation for the

30

Griffith Observatory.  "Defendants must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health, or safety in order to satisfy their burden." Benning, 845 F.Supp.2d at 1382 (citation omitted).

The Court's inquiry is whether Defendants have employed the least restrictive means as to this Plaintiff, Akeem Muhammad, a Muslim inmate confined in disciplinary confinement at FSP, attempting to comply with the tenets of his faith to fast from astronomical twilight to sundown.  Defendant must justify both their policy and their refusal to grant Plaintiff some religious-based exception or accommodation.  Defendants have not shown that the Ramadan confinement feeding policy is the least restrictive means of furthering their interests in safety and security.  See Daniels v. Harris, No. C09-5542RJB/JRC, 2011 WL 1562243, at *3 (W.D. Wash. Mar. 22, 2011) (recognizing that packaged Ramadan meals containing nutrition for an entire day as a pre-dawn meal and the provision of a meal substitute similar to Ensure® for each meal missed was the policy adopted to avoid bartering and misuse of food items during Ramadan), report and recommendation adopted by Daniels v. Harris, No. 09-5542RJB/JRC, 2011 WL 1561955 (W.D. Wash. Apr. 25, 2011); Colquitt v. Camp, No. 2:03-cv-1-FtM-29SPC, 2006 WL 2792894, at *2 (M.D. Fla. Sept. 27, 2006) (not Reported in F.Supp.2d)

(finding a Muslim inmate raised a constitutional claim pursuant to 42 U.S.C. § 1983, based on the failure of jail officials to allow him a reasonable opportunity to exercise religious freedom during Ramadan, when his religious beliefs required that he eat no meat and fast for approximately two hours prior to sunrise until after sunset); DeHart v. Horn, 390 F.3d 262, 271 (3rd Cir. 2004) (noting that suhoor meal bags, bagged meals that do not spoil overnight, provided to Muslim inmates did not require major changes in how the prison purchased, stored or prepared food); Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1208 (10th Cir. 1999) (in a § 1983 action, finding the spiritual experience of inmate Makin diminished by the Ramadan policy for inmates in segregation; acknowledging that the prison officials failed to provide evidence of the budgetary or security impact of accommodating prisoners in segregation with respect to providing meals "nutritionally equivalent to the three meals" and "two hours prior to sunrise until after sunset[;]" and concluding that Makin was denied a reasonable opportunity to pursue his religion).

Plaintiff has proposed a number of alternatives to the current feeding policy, and Defendants have not shown that the interest in safety and security would be compromised if they accommodated Plaintiff's request to be fed prior to astronomical twilight, or be provided with bagged meals or packaged meals

32

that do not spoil overnight, or be provided with some other accommodation which does not present him with "the choice of violating a religious tenet or going without food." <u>Al-Amin v. Shear</u>, 325 F. App'x at 194.  Additionally, Defendants have not shown that Plaintiff has been provided with a nutritiously adequate diet while on the Ramadan fast.[10]  In sum, Defendants have failed to demonstrate that the policy at issue is the least restrictive means of achieving a compelling governmental interest.  Therefore, Defendants Motion for Summary Judgment on the interrelated RLUIPA claims is due to be denied.

Therefore, it is now

**ORDERED:**

1.  Defendants' Motion for Summary Judgment (Doc. #173) is **GRANTED** insofar as Plaintiff seeks monetary damages from the Defendants in their official capacities; insofar as the Defendants are sued in their official capacities, RLUIPA does not allow damage claims against the Defendants; and RLUIPA does not create a private right of action for monetary damages against the Defendants sued in their individual capacities.

---

[10] There is no evidence that Plaintiff has actually been provided with fortified beverages like Ensure®, and it is certainly questionable whether he has been provided with sufficient daily fruits, vegetables, and protein to ensure that he is receiving the appropriate daily nutrition during the Ramadan fast.  This is particularly so since the menu portions have allegedly been reduced since 2009, and at most, the Muslim inmates participating in the Ramadan fast are provided with two meals per day.

With respect to Plaintiff's RLUIPA claims for injunctive relief, the Motion for Summary Judgment (Doc. #173) is **DENIED**.

    2.   Plaintiff's February 11, 2013, Rule 72(a) Objections to Magistrate Judge's 2/1/13 Order (Doc. #273) are **DENIED** as the Magistrate Judge's Order (Doc. #272) is not clearly erroneous or contrary to law.  See 28 U.S.C. § 636(b)(1)(A).

    3.   Plaintiff's February 11, 2013, Motion to Direct Clerk to Scan and File the Exhibits to Docket #258 Electronically (Doc. #274) is **DENIED**.  The Exhibits submitted by Plaintiff are over the five megabyte limitation of the system.  Although the Appendix Exhibits were not scanned by the Clerk of the Court, the documents have been filed separately and there is a directive to refer to the Court file.  The Court has thoroughly reviewed and considered the original Exhibits submitted by Plaintiff.

    **DONE AND ORDERED** at Jacksonville, Florida this 28th day of February, 2013.


ROY B. DALTON, JR.
United States District Judge

```
sa 2/21
c:
Akeem Muhammad
Ass't A.G. (Stubbs)
```